**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER BYRON and KAREN LUEDY, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CONAIR CORPORATION, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiffs Jennifer Byron and Karen Luedy (hereinafter, "Plaintiffs") by their undersigned attorneys, bring this action on behalf of themselves, all others similarly situated, and the general public against Defendant, Conair Corporation, ("Conair"), and states the following:

**NATURE OF THE ACTION**

1.      This is a consumer class action brought individually by Plaintiffs and on behalf of all persons in the below-defined proposed Classes, due to Conair's sale of certain defective hair dryers, in particular, Conair's Infiniti Pro 1875-watt hair dryer (259/279 Series) (hereinafter, the "Product" or "Products").

2.      In order to reap substantial profits from the sales of the Product, Conair cut corners by, among other things, failing to perform sufficient product testing to ensure the Product was safe for consumer use.

3.      As a result, and unbeknown to Plaintiffs and members of the Classes at the time of their purchase, and contrary to the express and implied representations made by Conair in respect to the Product, the Product is defective and malfunctions and poses a serious fire hazard to

consumers which, if known to Plaintiffs and members of the Classes, would have caused Plaintiffs and members of the Classes not to purchase or use the Product.

4. Indeed, in May of 2017, following years of litigation arising out of several reported incidents with respect to the Product, Conair entered into a class action settlement resolving the claims of consumers who purchased the Products in California and New York. *See Czuchaj v. Conair Corporation,* 3:13-cv-01901-BEN-RBB, Doc. 365 (S.D. Cal.). However, consumers, (including Plaintiffs) across the rest of the country, remain uncompensated for their purchase of a worthless and dangerous Product.

5. Despite having knowledge that the Product it sold is dangerous, malfunctions, and otherwise worthless, Conair still refuses to adequately compensate consumers for their purchase of the Product.

6. As a result, Plaintiffs and members of the Classes have been, and continue to be harmed, by purchasing a worthless product under false pretenses that poses a serious fire hazard that could result in personal injury or property damage.

7. Plaintiffs and the Classes thus bring claims for consumer fraud, breach of warranty, negligent misrepresentation, and unjust enrichment and seek damages, interest, costs, and reasonable attorneys' fees.

## PARTIES

8. Plaintiff Jennifer Byron is a citizen and resident of the Commonwealth of Pennsylvania, residing at 710 Pancoast Street, Dickson City, PA 18519.

9. Plaintiff Karen Luedy is a citizen and resident of the State of Ohio, residing at 2004 Treading Avenue, Cleveland, OH 44109.

10.     Defendant Conair is a Delaware corporation headquartered at 150 Milford Road, East Windsor, New Jersey 08520.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class members.

12.     The Court has personal jurisdiction over Conair because it is headquartered in this District, regularly conducts business in this District, and/or under the stream of commerce doctrine by causes its products to be disseminated in this District.

13.     Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

14.     Conair is a company headquartered in East Windsor, New Jersey.  It is one the world's largest privately held health and beauty companies and has been around for more than 50 years.

15.     As part of its operations, Conair engages in the business of designing, manufacturing and selling hair dryers to consumers either directly through its website or through major retail chains nationwide. Conair holds the number one position in the industry with respect to hair dryers.

16.     One of the products Conair developed, designed and manufactured was the Product:



17.     The Product was sold at nationwide retailers such as Sam's Club, Wal-Mart, Target and CVS Pharmacies.

18.     Because of its reputation in the industry, as well as its advertising and marketing in respect to the Product, Conair sold the Product at a premium for about $24.99 to $39.99 whereas similar hair dryers might sell for as little as $10.97.[1]

19.     On the packaging of the Product, Conair promised, *inter alia*, it would provide "Salon Performance" and was equipped with a "professional AC Motor design."

---

[1] *See, e.g.*, https://www.walmart.com/ip/Revlon-1875W-Compact-Travel-Hair-Dryer-Black/14551419?wmlspartner=wlpa&selectedSellerId=0&wl13=2816&adid=22222222227000478089&wl0=&wl1=g&wl2=c&wl3=40842329432&wl4=pla-58473496009&wl5=9021734&wl6=&wl7=&wl8=&wl9=pla&wl10=8175035&wl11=local&wl12=14551419&veh=sem&gclid=EAIaIQobChMIpsj6j5f_5wIVYRitBh3KhAtyEAQYASABEgJd-fD_BwE.

20.     Conair further marketed the Product on the packaging as providing "Great Hair … Salon Results at Home."

21.     Conair further warranted the Product for and to consumers, including Plaintiffs, against defects in material or workmanship.

22.     Conair made the aforementioned representations and promises to consumers on the label and packaging of the Product. It also included these representations and promises in its marketing for the Product.

23.     Conair directed the aforementioned representations and promises about the Product to consumers, like Plaintiffs and members of the Classes, and Conair intended that Plaintiffs and members of the Classes read and rely on its representations.

24.     However, contrary to the aforementioned representations and promises made in respect to the Product, the Product was defective, malfunctioned and posed a serious fire hazard to consumers.

25.     On information and belief, the Product was defective and malfunctioned because the heater coil in the barrel of the hair dryer came into contact with adjacent coils that would create an electrical short. As a result of the electrical short, hot coils would project out of the dryer posing a burn risk or fire hazard.

26.     What is more, despite the dangers posed by this product defect, Conair failed to disclose the fact to consumers on the label and packaging of the Product and/or in the Product's marketing materials.

27.     On information and belief, this defect arose due to Conair's failure to, among other things, perform sufficient product testing to ensure the Product was safe for consumer use, as expressly and/or impliedly advertised by Conair.

28.     Because Conair decided to cut corners in the manufacturing of the Product, consumers, including Plaintiffs, have complained the Product sparks and catches fire during normal use and sometimes even when the Product is turned off.[2]

29.     A sample of the complaints show the dangers inherent with the use of the Product:

| Comments[3] |
| --- |
| I have a Conair 1875. After using it and turning it off about five minutes later, it turned itself on and caught fire. I think these should be recalled. (Thank God I was still home when this happened.) |
| I have a Conair 1875 model hair dryer and when I was cleaning out closets, the dryer started up and by the time I got to the dressing area there were flames shooting out of it. I quickly pulled out the plug and threw a wet towel over it. Horrible smell and smoke but nothing to speak of was damaged except some frayed nerves and a hair brush where the teeth had melted. I am just thankful I was home at the time. |
| While drying my hair, Conair 1875 suddenly made a loud pop and stopped working. It was 1-2 years old. It was pretty scary at the time but going by other posts, I see it could have been worse. I am surprised there has not been a recall. |
| My 87 year old mother was drying her hair when the appliance burst into flames-She luckily was not injured and was only minor damage to her home, however this could have been disasterous [sp] and I feel someone should know about it. |

30.     Similarly, many news outlets reported the problems with the Product, noting the "hair dryers …can short out and start a fire or burn someone."[4]

31.     Indeed, the reported incidents with the Product became so pervasive, Conair advised consumers "to stop using the Product" immediately.[5]

---

[2] https://www.consumeraffairs.com/homeowners/conair.html.
[3] *Id.*
[4] *See, e.g.,* https://www.wtkr.com/2013/10/16/conair-recalls-570k-hair-dryers.
[5] https://www.justicepays.com/news/we-want-you-to-be-careful-conair-recalls-570k-hair-dryers-for-fire-and-burn-hazards.

32.     After Conair publicly acknowledged the defects inherent with the Product, Conair entered into a class action settlement for consumers in California and New York who purchased it.  *See Czuchaj v. Conair Corporation,* 3:13-cv-01901-BEN-RBB, Doc. 365 (S.D. Cal.).

33.     However, Conair's settlement ignored consumers across the rest of the country, including Plaintiffs.

34.     Conair never paid Plaintiffs or Class members a full refund for their purchase. Nor did it address any property damage or personal injury caused by the Product.

35.     Because of Conair's omissions, false promises and deceptive and misleading advertising practices, consumers were fraudulently induced to purchase the Product. The only conceivable purpose for falsely and deceptively making these claims about the Product, and failing to disclose the serious fire hazard it posed, was to stimulate sales and enhance Conair's profits.

36.     As a result, consumers, including Plaintiffs, purchased and paid valuable consideration for a Product that is worthless. Indeed, Conair surely understands that no reasonable consumer would purchase the Product if it were accurately labeled and/or marketed as having a propensity to short-out, catch fire, and/or shoot flames and hot projectiles that could cause personal injury and property damage, and pose a serious fire hazard.

### Plaintiffs Relied Upon Conair's Omissions, False Promises and Deceptive and Misleading Advertising Practices to Purchase the Product

**Plaintiff Byron**

37.     Plaintiff Byron fell victim to Conair's mislabeling, omissions, and false promises in respect to the Product.

38.     In March of 2019, Plaintiff Byron purchased the Product at a Target store in Dickson City, Pennsylvania.

39.     While using the Product, Plaintiff Byron noticed it would spark and short-out and would otherwise malfunction.  She indicates that every time she plugs the Product in, it sparks and smells of smoke.

40.     Plaintiff Byron purchased the Product believing that it was a safe and reliable hair dryer, and that it would provide her with all the features described above, as prominently advertised on the labeling and packaging of the Product. However, the Product was defective and posed a serious fire hazard.

41.     Plaintiff Byron would not have purchased Product had it been accurately labeled and/or marketed as having a propensity to short-out, catch fire, and/or shoot flames and hot projectiles that could cause personal injury and property damage, and pose a serious fire hazard.

42.     Plaintiff Byron is in the same Class as all other consumers who purchased Defendant's Product during the relevant time period. Plaintiffs and the Class members were in fact misled by Defendant's omissions and/or misrepresentations in respect to the Product. Plaintiffs and Class members would have purchased other hair dryers, if any at all, if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product by Conair.

**Plaintiff Luedy**

43.     Plaintiff Luedy fell victim to Conair's omissions, mislabeling and false promises in respect to the Product.

44.     In October of 2018, Plaintiff Luedy purchased the Product at a Target store near her house.

45.     While using the Product, Plaintiff Luedy noticed it would spark and short-out and would otherwise malfunction.

46.     Plaintiff Luedy purchased the Product believing that it was a safe and reliable hair dryer, and that it would provide her with all the features described above, as prominently advertised

on the labeling and packaging of the Product. However, the Product was defective and posed a serious fire hazard.

47.     Plaintiff Luedy would not have purchased Product had it been accurately labeled and/or marketed as having a propensity to short-out, catch fire, and/or shoot flames and hot projectiles that could cause personal injury and property damage, and pose a serious fire hazard.

48.     Plaintiff Luedy is in the same Class as all other consumers who purchased Defendant's Product during the relevant time period. Plaintiffs and the Class members were in fact misled by Defendant's omissions and/or misrepresentations in respect to the Product. Plaintiffs and Class members would have purchased other hair dryers, if any at all, if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product by Conair.

### New Jersey's Substantive Law Applies to the Proposed Class

49.     New Jersey's substantive laws apply to the proposed nationwide class, as defined herein.

50.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the nationwide class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

51.     New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiffs and all class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

52.     Defendant's principal place of business is located in New Jersey.

53.     Defendant also owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendant's conduct under its laws.

54.     Defendant's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

55.     A substantial number of members of the class also reside in New Jersey and bought the Product in New Jersey.

56.     Defendant's alleged misconduct emanated from New Jersey.

57.     Defendant's conduct similarly injured and affected Plaintiffs and class members. For instance, Defendant's marketing and any testing efforts relating to the defective Product, as well as its warranty decisions, were undertaken and orchestrated from its headquarters in New Jersey.

58.     The application of New Jersey's laws to the class also is appropriate under New Jersey's choice-of-law rules because New Jersey has significant contacts to the claims of Plaintiffs and the nationwide class, and New Jersey has a greater interest in applying its laws here than in any other interested state.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiffs bring this action and seek certification of the following Classes:

**The National Class:** All persons within the United States who purchased the Product from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

**Ohio Sub-Class:** All persons in Ohio who purchased the Product from the beginning of any applicable limitations period through the date of class certification (the "Ohio Sub-Class").

**Pennsylvania Sub-Class:** All persons in Pennsylvania who purchased the Product from the beginning of any applicable limitations period through the date of class certification (the "Pennsylvania Sub-Class").

60.     Excluded from the Classes are (i) any person who was member of the settlement class in *Czuchaj v. Conair Corporation*, 3:13-cv-01901-BEN-RBB, Doc. 365 (S.D. Cal.), (ii) Defendant, (iii) any entities in which Defendant has a controlling interest, (iv) Defendant's agents, employees and their legal representatives, (v) any Judge to whom this action is assigned, (vi) any member of such Judge's staff and immediate family, (vii) any person who is seeking damages for physical injury as a result of the defect at issue in this litigation; and (viii) Plaintiffs' counsel, their staff members, and their immediate family.

61.     Plaintiffs reserve the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

62.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

63.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the hundreds of thousands. The exact number of members of the Classes is presently unknown to Plaintiffs but may be ascertained from Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

64.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a.  whether the Defendant's claims about the Product discussed above are true, or are misleading, or reasonably likely to deceive;

b.  whether the alleged conduct constitutes violations of the laws asserted herein;

c.  whether Conair engaged in false or misleading advertising;

d.  whether Plaintiffs and the members of the Classes were damaged by Defendant's conduct;

e.  whether Plaintiffs and Class members are entitled to restitution; and

f.  whether Plaintiffs and Class members are entitled to an award of punitive damages.

65.     Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiffs seek to enforce, on behalf of themselves and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

66.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiffs or to any particular members of the Classes.

67.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and she will prosecute this action

vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and the undersigned counsel.

68.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

69.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final corresponding declaratory relief, as described below, with respect to the members of the Classes as a whole.

70.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a

potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I

### Violations of New Jersey Consumer Fraud Act ("CFA") N.J.S.A. § 56:8-1, *et seq.* (On Behalf of the National Class)

71.     Plaintiffs, individually and on behalf of the National Class, repeat and re-allege all previously alleged paragraphs, as if fully alleged herein.

72.     The CFA was enacted and designed to protect consumers against unfair, deceptive and fraudulent business practices. N.J. Stat. Ann. §56:8-1, *et seq.*

73.     N.J. Stat. Ann. §56:8-2 provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

74.     Plaintiffs, other members of the Class, and Defendant are "persons" within the meaning of the CFA.

75.     The defective Product sold by Defendant is "merchandise" within the meaning of the CFA, and Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA and, thus, are entitled to the statutory remedies made available in the CFA.

76.     Defendant, through its advertisements and public statements regarding the defective Product's safety, manufacturing quality, and warranties noted above, used

unconscionable commercial practices, deception, fraud, concealment, false promises, and misrepresentations, in violation of the CFA, in connection with the marketing and sale of the Product.

77.     Defendant also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiffs and other Class members regarding the nature of the Product's dangerous defects.

78.     These acts and omissions directly and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, inter alia, money spent purchasing the defective Product together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

79.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

## Count II

### Breach of Express Warranties
### (On behalf of the National Class and,
### in the alternative, the Ohio and Pennsylvania Sub-Classes)

80.     Plaintiffs repeat and re-allege by reference paragraphs 1-70 of this Complaint as if fully stated herein.

81.     Plaintiffs bring this claim against Defendant on behalf of themselves, the National Class and, in the alternative, the Ohio and Pennsylvania Sub-Classes (for purposes of this Count, the "Classes").

82.     As alleged herein, Defendant made express warranties and representations regarding the Product which became part of the basis of the bargain between the parties.

83.     Defendant made these representations to specifically induce Plaintiffs and Class members to purchase the Product.

84.     Defendant's representations that the Product was free of defects in material or workmanship constituted part of the basis of the bargain between Defendant and Plaintiffs (and Class members).

85.     Defendant breached the aforementioned express warranties about the Products and their qualities because Defendant's statements about them were false, because the Products do not conform to Defendant's affirmations and promises described above, and suffer from defects in material or workmanship that causes them to spark and/or catch on fire, rendering the Product unfit for its intended use and purpose. This defect substantially impairs the use, value and safety of the Product.

86.     The defects at issue herein existed when the Product left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Product.

87.     Plaintiffs and the members of the Classes would not have purchased the Products had they known the truth about them.

88.     Defendant's conduct described in this complaint constitutes a breach of express warranties under UCC § 2-313, as adopted by the following state statutes:

Ala. Code § 7-2-313, *et seq.*; Alaska Stat. § 45.02.313, *et seq.*; Ariz. Rev. Stat. § 47-2313, *et seq.*; Ark. Code § 4-2-313, *et seq.*; Colo. Rev. Stat. § 4-2-313, *et seq.*; Conn. Gen. Stat. § 42a-2-313, *et seq.*; 6 Del. C. § 2-313, *et seq.*; D.C. Code § 28:2-313, *et seq.*; Fla. Code § 672.313, *et seq.*; O.C.G.A. § 11-2-313, *et seq.*; Haw. Rev. Stat. § 490:2-313, *et seq.*; Idaho Code § 28-2-313, *et seq.*; 810 Ill. Comp. Stat. 5/2-313, *et seq.*; Ind. Code § 26-1-2-313, *et seq.*; Iowa Code § 554.2313, *et seq.*; Kan. Stat. § 84-2-313, *et seq.*; Ky. Rev. Stat. § 355.2-313, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-313, *et seq.*; Md. Code Ann., Com. Law § 2-313, *et seq.*; Mass. Code 106, § 2-313, *et seq.*; Mich. Comp. Laws 440.2313, *et seq.*; Minn. Stat. § 336.2-313, *et seq.*; Miss. Code § 75-2-313, *et seq.*; Mo. Rev. Stat. § 400.2-313, *et seq.*; Mont. Code § 30-2-313, *et seq.*; Neb. U.C.C. § 2-313, *et seq.*; Nev. Rev. Stat. § 104.2313, *et seq.*; N.H. Rev. Stat. § 382-A:2-313, *et seq.*; N.J. Stat. § 12A:2-313, *et seq.*; N.M. Stat. § 55-2-313, *et seq.*; N.C. Gen. Stat. § 25-2-313, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; Ohio Rev. Code 1302.26, *et*

*seq.*; Okla. Stat. Tit. 12A, § 2-313, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; 13 Pa. Cons. Stat. § 2313, *et seq.*; R.I. Gen. Laws § 6A-2-313, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 313, *et seq.*; V.T.C.A., Bus. & C. § 2.313, *et seq.*; Utah Code § 70A-2-313, *et seq.*; Vt. Stat. Tit. 9A, § 2-313, *et seq.*; Va. Code § 8.2-313, *et seq.*; Wash. Rev. Code § 62A.2-313, *et seq.*; W. Va. Code § 46-2-313, *et seq.*; Wis. Stat. § 402.313, *et seq.*; and Wyo. Stat. § 34.1-2-313, *et seq.*

89.     Plaintiffs and each of the other Nationwide Class members have had sufficient direct dealings with Defendant to establish privity of contract.

90.     Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers. Third-party retailers such as Target and Walmart were not intended to be the ultimate consumers of the Product and have no rights under the warranty agreements provided with the Product; the warranty agreements were designed for and intended to benefit consumers.

91.     All conditions precedent to seeking liability under this claim for breach of express have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

92.     As a result of Defendant's breach of warranty, Plaintiffs and each member of the Classes has been damaged in an amount to be determined at trial, including, but not limited to, the purchase price of the Product any consequential and incidental damages resulting from their purchases.

93.     Plaintiffs and the Classes were not required to notify Defendant of its breaches of warranty because it had actual knowledge of them prior to the filing of this Complaint and because the Product caused personal injury.

94.     Defendant has refused to remedy the damages alleged herein to Plaintiffs and Class members.

**Count III**

**Breach of Implied Warranties
(On behalf of the National Class and,
in the alternative, the Pennsylvania Sub-Class)**

95.     Plaintiffs repeat and re-allege by reference paragraphs 1-70 of this Complaint as if fully stated herein.

96.     Plaintiffs bring this claim against Defendant on behalf of themselves, the National Class and, in the alternative, the Ohio and Pennsylvania Sub-Classes (for purposes of this Count, the "Classes").

97.     UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

98.     UCC § 2-314 has been adopted in New Jersey and in 35 other states.

99.     As set forth above, Plaintiffs have standing to pursue this claim as they suffered injury in fact and has lost money or property as a result of Defendant's actions.

100.     Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

101.     Defendant is in the business of manufacturing, supplying, marketing, advertising, warranting, and selling the Product. By placing such products into the stream of commerce, and by operation of law under N.J. Stat. § 12A:2-314, *et seq.*, Defendant impliedly warranted to Plaintiffs and members of the Classes that the Product was of a certain quality and was fit for its ordinary and particular purpose, *i.e.*, it was a safe and functioning hair dryer.

102.     The Products were unfit for their ordinary use and were not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label, as warranted by

Defendant. Prior to purchase, Plaintiffs and members of the Classes could not have really discovered that the Products were not fit for their ordinary purpose and did not conform to the quality previously represented.

103.    Similarly, the Products were unfit for their particular purpose. At the time Plaintiffs and members of the Classes purchased the Products, Defendant knew or should have known that Plaintiffs and members of the Classes would purchase the Products because they are labeled and marketed as a top-of-the-line hair dryer. However, Defendant's product was not suitable for this purpose at the point of sale because it, *inter alia*, had a propensity to short-out, catch fire, and/or shoot flames and hot projectiles that could cause personal injury and property damage, and pose a serious fire hazard.

104.    The defects in material and workmanship at issue herein existed when the Product left Defendant's possession or control and was sold to Plaintiffs and Class members.  The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Product.

105.    Plaintiffs and members of the Classes would not have purchased the Products if they knew the truth about them.

106.    Accordingly, Plaintiffs and members of the Classes did not receive the benefit of their bargain in purchasing the Products.

107.    Defendant's conduct described in this Complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted by the following state statutes:

Ala. Code § 7-2-314, *et seq.*; Alaska Stat. § 45.02.314, *et seq.*; Ariz. Rev. Stat. § 47-2314, *et seq.*; Ark. Code § 4-2-314, *et seq.*; Colo. Rev. Stat. § 4-2-314, *et seq.*; Conn. Gen. Stat. § 42a-2-314, *et seq.*; 6 Del. C. § 2-314, *et seq.*; D.C. Code § 28:2-314, *et seq.*; Fla. Code § 672.314, *et seq.*; O.C.G.A. § 11-2-314, *et seq.*; Haw. Rev. Stat. § 490:2-314, *et seq.*; Idaho Code § 28-2-314, *et seq.*; 810 Ill. Comp. Stat. 5/2-314, *et seq.*; Ind. Code § 26-1-2-314, *et seq.*; Iowa Code § 554.2314, *et seq.*; Kan. Stat. § 84-2-314, *et seq.*; Ky. Rev. Stat. § 355.2-314, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-314, *et seq.*; Md. Code Ann., Com. Law §

2-314, *et seq.*; Mass. Code 106, § 2-314, *et seq.*; Mich. Comp. Laws 440.2314, *et seq.*; Minn. Stat. § 336.2-314, *et seq.*; Miss. Code § 75-2-314, *et seq.*; Mo. Rev. Stat. § 400.2-314, *et seq.*; Mont. Code § 30-2-314, *et seq.*; Neb. U.C.C. § 2-314, *et seq.*; Nev. Rev. Stat. § 104.2314, *et seq.*; N.H. Rev. Stat. § 382-A:2-314, *et seq.*; N.J. Stat. § 12A:2-314, *et seq.*; N.M. Stat. § 55-2-314, *et seq.*; N.C. Gen. Stat. § 25-2-314, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-314, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; 13 Pa. Cons. Stat. § 2314, *et seq.*; R.I. Gen. Laws § 6A-2-314, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 314, *et seq.*; V.T.C.A., Bus. & C. § 2.314, *et seq.*; Utah Code § 70A-2-314, *et seq.*; Vt. Stat. Tit. 9A, § 2-314, *et seq.*; Va. Code § 8.2-314, *et seq.*; Wash. Rev. Code § 62A.2-314, *et seq.*; W. Va. Code § 46-2-314, *et seq.*; Wis. Stat. § 402.314, *et seq.*; and Wyo. Stat. § 34.1-2-314, *et seq.*

108.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Classes, not distributors who sold the Products. Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Product.

109.    As a result of Defendant's breach of warranties, Plaintiffs and each member of the Classes has been damaged in an amount to be determined at trial, including, but not limited to, the purchase price of the Product and any consequential and incidental damages resulting from their purchases.

110.    Plaintiffs and Class members were not required to notify Defendant of its breaches of warranty because it had actual knowledge of them prior to the filing of this Complaint and because the Product caused personal injury.

111.    Defendant has refused to remedy the damages alleged herein to Plaintiffs and Class members.

**Count IV**

**Negligent Misrepresentation**
**(On behalf of the National Class and,**
**in the alternative, the Ohio and Pennsylvania Sub-classes)**

112.    Plaintiffs repeat and re-allege by reference paragraphs 1-70 of this Complaint as if fully stated herein.

113.    Plaintiffs bring this claim against Defendant on behalf of themselves, the nationwide Class and, in the alternative, the Ohio and Pennsylvania Sub-Classes.

114.    On information and belief, Defendant falsely represented at the time it sold the Product to Plaintiffs and Class members that it was free from defects.

115.    Defendant failed to exercise reasonable care or competence in obtaining or communicating such information to Plaintiffs and Class members.

116.    Plaintiffs and Class members justifiably relied on such representations.

117.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and Class members have suffered and continue to suffer various damages.

118.    As such, Plaintiffs are entitled to an amount of compensatory damages to be proven at trial. Such damages are comprised of, *inter alia*: compensation for the lost use of their bargained-for Products; the return of all monies paid for the Products, or the diminution in value of the Products; all incidental and consequential damages incurred; and attorney's fees and costs for bringing the instant action.

**Count V**

**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law,
73 Pa. Cons. Stat. §§ 201-2 and 201-3, *et seq.*
(On behalf of the Pennsylvania Subclass)**

119.    The Pennsylvania Plaintiff identified above, individually and on behalf of the Pennsylvania Subclass, incorporates by reference paragraphs 1-70 of this Complaint as if fully stated herein.

120.    The Pennsylvania Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Stat. Ann. § 201-3.

121.    Defendant's deceptive acts and practices include:

    a.   Failing to disclose the fact dangers posed by the Product defect to consumers on the label and packaging of the Product and/or in the Product's marketing materials.

    b.   Advertising and marketing the Product as free of defects in material and workmanship, and as a premium product that would provide "Salon Performance" and "Salon Results at Home."

    c.   Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products;

    d.   Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior;

    e.   Representing that goods have characteristics that they do not have;

f.   Representing that goods are of a particular standard, quality, grade, style, or model, when they are of another;

g.   Misrepresenting a material fact that has a tendency to mislead;

h.   Failing to state a material fact where the failure is misleading;

i.   Advertising or offering goods without the intent to sell them as advertised or offered; and

j.   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

122.   Defendant violated 73 Pa. Stat. Ann. § 201-3's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Product, including the facts that the Product was not suitable for this purpose at the point of sale because it, *inter alia*, had a propensity to short-out, catch fire, and/or shoot flames and hot projectiles that could cause personal injury and property damage, and pose a serious fire hazard.

123.   As alleged more fully herein, Defendant's marketing and sale of Defendant's Product, and more specifically its failure to inform customers of the defects in materials and workmanship inherent in Defendant's Product, violated 73 Pa. Stat. Ann. § 201-3, common law, and other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices.

124.   Defendant violated 73 Pa. Stat. Ann. § 201-3's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Products despite its knowledge that they are misrepresented and carry health and safety risks

(including the risks of shorting-out, catching fire, and/or shooting flames and hot projectiles that could cause personal injury and property damage, and posing a serious fire hazard) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential hazards, prior to purchase).

125.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiff and Pennsylvania Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

126.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, Pennsylvania Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with safety risks and otherwise did not perform as advertised.

127.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

128.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Pennsylvania Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's

Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

129.    Defendant recklessly disregarded Plaintiff and Pennsylvania Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and safety risks put it on notice that the Defendant's Products were not as it advertised.

130.    Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiff and the Pennsylvania Subclass Members seek an order awarding damages, punitive and/or treble damages, and any other just and proper relief available under the Pennsylvania Unfair Trade Practices Act.

**Count VI**

**Unjust Enrichment[6]**
**(On behalf of the Nationwide Class and,**
**in the alternative, the Ohio and Pennsylvania Sub-Classes)**

131.    Plaintiffs repeat and re-allege by reference paragraphs 1-70 of this Complaint as if fully stated herein.

132.    Plaintiffs bring this claim against Defendant on behalf of themselves, the nationwide Class and, in the alternative, the Ohio and Pennsylvania Sub-Classes (hereinafter the "Classes").

133.    Plaintiffs and the other members of the Classes conferred benefits on Defendant by purchasing the Products at a premium price.

134.    Defendant has knowledge of such benefits.

135.    Defendant received the benefits to the detriment of Plaintiffs and the other members of the Classes because Plaintiffs and the other members of the Classes purchased a worthless product from Defendant.

---

[6] Count VII is plead in the alternative to Count II.

136.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Product by Plaintiffs and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable.

137.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the Classes for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Count, respectfully request that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Class;

B.    Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Class;

C.    Ordering Defendant to pay restitution to Plaintiffs and the other members of the Classes;

D.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

E.    Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statute invoked herein, to Plaintiffs and the other members of the Class;

F.      Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the Class, as allowable by law;

G.      Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated:  March 9, 2020                          Respectfully submitted,

                                               /s/Natalie Finkelman Bennett
                                               Natalie Finkelman Bennett
                                               James C. Shah
                                               SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
                                               475 White Horse Pike
                                               Collingswood, NJ 08107
                                               Tel:  856-858-1770 |
                                               Fax: 866-300-7367
                                               nfinkelman@sfmslaw.com
                                               jshah@sfmslaw.com

                                               Gary E. Mason*
                                               David K. Lietz*
                                               WHITFIELD BRYSON & MASON, LLP
                                               5101 Wisconsin Avenue NW, Suite 305
                                               Washington, DC 20016
                                               Tel: 202-640-1168
                                               Fax: 202-429-2294
                                               gmason@wbmllp.com
                                               dlietz@wbmllp.com

                                               Gary M. Klinger*
                                               KOZONIS & KLINGER, LTD.
                                               227 W. Monroe Street, Suite 2100
                                               Chicago, Illinois 60606

Phone: 312.283.3814
gklinger@kozonislaw.com
*pro hac vice to be filed*

*Attorneys for Plaintiffs and the Putative Classes*